Alright, let's pick up our next case. Koshinski v. Trame. Was I close on that pronunciation? You pronounced it the same way I pronounced it. Trame. May it please the court, counsel, my name is Thomas Mack and I represent David Koshinski in this case. This case is rather a limited issue on review. The underlying case is whether the statutes that provide for the suspension of the fundamental constitutional right to keep and bear arms upon entry of an ex parte emergency order of protection here without any notice or opportunity to be heard is constitutional. That is what the underlying case is about. In Illinois, when an ex parte emergency or any other order of protection is entered, the person, the respondent's firearms licenses, depending on the type, either a firearm owner's identification card, colloquially called a FOIA card, or a concealed weapons license as the case may be, or both, are suspended. Immediately and without notice from the Firearms Services Bureau, which is the defendant in here, in the person of Ms. Trame. The end result of having those licenses or either of those licenses suspended in Illinois is that in Illinois one cannot either possess a firearm or carry a firearm outside of the home unless you fall into one of very few limited categories such as law enforcement alike. In this case, Mr. Koshinski got into an argument with his wife's stepfather-in-law on the telephone over money. And his wife's stepfather-in-law called my client, Mr. Koshinski, on the phone, demanded money pursuant to some purported loan. The loan itself, of course, is not an issue in this case. Mr. Koshinski advised that he didn't owe anybody. The stepfather-in-law advised Mr. Koshinski that the stepfather-in-law was going to come over to Mr. Koshinski's home and forcibly extract it from Mr. Koshinski. To which Mr. Koshinski simply advised on the telephone, if you come over here and attack me, I'll defend myself. That resulted in an emergency ex parte order of protection entered against Mr. Koshinski by the stepfather-in-law. His wife's stepfather, not even his own stepfather. When that happened, pursuant to statute, the clerk of court of Madison County sent a copy of that order to ultimately the Firearms Services Bureau, who sent a letter to Mr. Koshinski advising that his two firearms licenses, his FOIA card and his concealed carry license, were both suspended immediately. In fact, Mr. Koshinski obtained the letter from the Firearms Services Bureau before he was even aware that an order of protection case had been filed against him. Under Illinois law, an emergency ex parte order of protection can last no less than 14 days, no longer than 21 days. Meaning that this ex parte order of protection that was entered without notice or an opportunity itself lasts a minimum of 14 days. Even if it is immediately vacated or suspended, it is incumbent upon Mr. Koshinski or any other respondent in an OP hearing to then file an appeal with the defendant and seek their licenses back. This appears to take about 45 days, even if the order of protection is immediately vacated or immediately expires with no further action. That happens over and over again in the state of Illinois. Mr. Koshinski filed this suit seeking conjunctive relief, among other remedies, to prevent that from happening to him in the future. There is an ongoing dispute between himself and his wife's step-in-laws, whatever specifically they are, that has continued since before this order of protection was filed. It continued after the order of protection was filed. The order of protection itself at this point is dismissed and vacated, but it remains subject to this happening over and over again. So he filed this action under Section 1983-42 U.S.C. Section 1983, seeking to protect and vindicate his Second Fourteenth Amendment rights. Mr. May, if we get past the mootness issue, if we do, do you think the outcome would be different in your argument if your client had shown up at the order of protection hearing? That's a completely different argument. I, in all candor to what I think you're ultimately getting at, I don't believe it would be constitutional to suspend any fundamental constitutional right based on the allegations that were made against Mr. Koshinski. However, he did not have an order of protection hearing with notice. He had an order of protection hearing without notice. But if he would have been given notice and if he would have been present and lost that hearing, the OP hearing, do you think that's enough for the State to then suspend the FOID card and the concealed carry? Under the facts of Mr. Koshinski's case, no. Could I come up with a fact scenario where it might be probable? Okay, well, give me the reason no. The reason no is if you look at what was actually Mr. Koshinski was accused of, which I explained earlier, he didn't commit a crime. He didn't threaten to commit a crime. He didn't commit a civil tort. He didn't threaten to commit a civil tort. All he did was say, if you come over to my house and attack me, I'll defend myself. But theoretically, that would have been the issue in the OP hearing. That is the allegation of the Petitioner in the OP hearing. Right. That's not Mr. Koshinski's side of the story. That's the Petitioner's in the OP side of the story. And according to Heller v. D.C., you have a fundamental constitutional right to defend yourself in your home against attack. Exactly what Mr. Koshinski said, if you come over to my house and attack me, I'll defend myself. Okay, but are you arguing this is a fundamental due process issue or not? It is both elements of due process and of the Second Amendment. The Fourteenth Amendment incorporates the Second Amendment under the due process provisions of the Fourteenth Amendment. That's how it is applicable against the state, Illinois, of course, being the state we're applying it to here. Does Illinois have a similar due process constitutional right? It does. Illinois' version of the Second Amendment is weaker in that it provides that the police power is an exception to the right to keep and bear arms, which is the police power is so broad that arguably we made the provisions practically worthless. But we're not seeking to go under the state provision. We're seeking to go under the federal provision and Section 1983. Thank you. Thank you, Your Honor. In any event, there is no possibility, based on the timelines involved in this case, that anyone whose white card or concealed weapons license was ever suspended under an ex parte emergency order of a hedge, as in this case, who would ever successfully bring an action without the state bringing up, well, its moot. And the reason is the timelines. Remember, an emergency ex parte order of protection is only good for 14 to 21 days. You go file a lawsuit in the circuit court on the first day you find out about it, you're already in that 14 to 21 days, and the circuit court is most likely going to put on a stamp there or mark it that a response is due in about 30 days. So even if a lawsuit was filed the same day, there is no mechanism to actually get relief unless we're talking about some sort of criminal violation, and the plaintiff in this case and the citizens of this state in general are not required in order to commit an arguable criminal violation of the law in order to get substantive relief. In this case, the argument of mootness doesn't apply for a variety of reasons, all of which are extensively brief. The first argument that I have that mootness does not apply is that, quite simply, mootness does not apply. If you actually look at the complaint, we're not seeking an order to give back Mr. Kishinsky's FOIA card or concealed weapons license. We're seeking prospective relief. We're seeking a future injunction across an attorney's fees. We acknowledge in the complaint, or at least in the response to the motion for moot, that he'll probably have his licenses back by the time this case gets adjudicated because he has no criminal record, he's not a threat to anybody, he qualifies as a law-abiding citizen. So, again, we're not asking that the FOIA card or the concealed weapons license be restored. Therefore, the fact that he's gotten them back by the time the state enters his appearance does not render this moot. But even if the case is technically moot, there are several exceptions to the mootness doctrine. One is the public interest exception, and there are three elements to the public interest exception. One is that the question presented is of a public nature. This case is of a public nature. The defendant is an employee of the state of Illinois in her official capacity as an employee of the state of Illinois seeking an adjudication on the constitutionality of an Illinois statute. That's a question of a public nature. Two, need for an authoritative determination to guide public officers. Again, the defendant is a public officer. We know what the defendant is going to do whenever she gets notice of an ex parte emergency order of protection. She's going to suspend whoever's FOIA card or concealed weapons license. We contend that it is necessary for this court or whichever court ultimately finally decides on the issue to make a determination that authoritatively guides her future conduct or wherever it takes her place in the future of the job. The third is the likelihood of a future occurrence. And again, as I noted earlier in my argument, this dispute, which has never become physical or violent, is ongoing between my client and his wife's step-in laws. Furthermore, if you walk into the Madison County Courthouse any Thursday in the afternoon, you're going to see this same thing play out over and over and over again. The likelihood of a future occurrence is virtual certainty. In fact, the majority of the substantive arguments that I've handled concerning orders of protection ultimately are resolved on how, if at all, it would affect the person's FOIA card or right to bear arms. Because all three elements of the public interest exception to the mootness doctrine apply, we believe that this court should reverse the circuit court and send it back to the trial court. There are... Mr. May, I didn't see where anybody attached the complaint that you filed as an appendix item. I don't believe it was filed as an appendix, but it is in the record. Of course. Yeah. But let me ask you this. What did you file? Is it a strictly 1983 action? The complaint itself, filed on June 15th of 2015, is, I believe, strictly 1983, but let me confirm. Yes, it is strictly a 1983 action, seeking relief under Section 1983 and cost of attorney's fees under Section 1988, which is the corollary of Section 1983. And the allegations in that complaint are state action? State action by a state actor, under cover of law. In that they revoked the FOID? Yes. As a matter of fact, it would be impossible for a non-state actor to do that, because the FOIA card is a government license issued by a governmental agency with government employees. I don't even believe that there's non-governmental contractors that work in that office. Okay. Thank you. The second exception to the mootness doctrine is the capable of repetition yet avoiding review, sometimes called the Roe v. Wade exception. And I would note, before getting into the substance of this, that Bacon Roe was three years old, give or take, when the Supreme Court issued its 1972, I believe, decision in Roe v. Wade. If Roe v. Wade was not moot in 1972, this case is not moot today. Anyway, the elements of the capable of repetition yet evading review doctrine are, A, a duration too short to have been litigated. I think I've addressed that issue, pointing out the 14 to 21 days that an ex parte emergency order of protection lasts. You're not even going to get an entry of appearance from the state in 14 to 21 days. That could never be litigated in that time period. Two, same complaining party potentially subject to the same action again. Again, nothing would stop the state from suspending Mr. Kaczynski's court card in the future if another emergency ex parte order of protection were entered against him by either the same petitioner or somebody else under similar, identical, or different fact circumstances. And those are the two elements under the capable of repetition yet evading review. I'm sorry to interrupt again. Yes. Can you tell me why we have this motion going down a different alley now? Yes. There's a motion where you don't think we should take judicial notice of the court orders that were entered in this proceeding. Yes, of course. Why? I'm happy to address that, Your Honor. The first time that I took an appeal with the state was actually the Lovell case that I cite in support of the motion to strike. And it has become my experience that the state particularly likes to attach documents that are not in the court record that they should have potentially brought to the court record in the trial court for the appellate court, and that they try to fix that on it. The reason that Your Honor should not consider those documents is, one, they were not filed in the trial court, which had they been filed there, potentially there might have been some other documents that I might have thought to file in response to them to explain them or the like. And while this court does technically have certain amounts of original jurisdiction pursuant to the Illinois Constitution, I'm very comfortable in saying that no appellate court in Illinois has ever exercised original jurisdiction. And thus, for Your Honor to consider those documents that were not in the lower court without sending it back for at least some hearing in the lower court would require, if so facto, this court would exercise some sort of original jurisdiction, which, again, no appellate court has ever actually exercised in Illinois, as near as I've been able to determine. And I'm confident it never has. If a party wants to include things in the record on appeal, they have an obligation to present these first to the trial court. They can't present an incomplete record to the trial court, win, lose, or draw in the trial court, go up to appeal and try to bend the whole, as it were, in the appellate court with new and different documents to try to give themselves a better argument. So you don't think the orders help you? I don't think. I mean, I recognize what you're saying, and that's one issue, but you've laid out a timeline as far as OP orders and things like that, and I'm just wondering if these exhibits prejudice you in any way or whether they help you or whether they're neutral. Could I make an argument that some of those documents are helpful? Yes. Could I make an argument that some of those documents are harmful? Yes. The simple fact of the matter is they don't belong at the appellate court because they weren't first presented to the trial court, which would allow each side to put in the record whatever is legally or factually appropriate. You can't doctor the appellate record ex post facto. Okay. I was wondering your position on that. Thank you. Thank you, Your Honor. Finally, I would note a third exception to the Moodness Doctrine, which is the collateral consequences. While I will concede that Mr. Kaczynski has not been prosecuted for this or anything remotely related to anything that we're talking about, he remains technically potentially an issue for prosecution because the way that the statutes in Illinois are written, it is a violation of the law to possess a firearm with a suspended, revoked, or nonexistent point. He did that. And I recognize that that probably constitutes a judicial admission on behalf of him here in the appellate court. It could potentially be used against him. I understand that, but it is factually true. Because of that, he remains potentially an issue for prosecution. An exception to the Moodness Doctrine, as briefed in the brief, is potential collateral consequences of these actions, potential prosecution. Thank you, Your Honor. Thank you. Argument on behalf of the appellate. Good afternoon, Your Honor. We're asking that the court affirm the dismissal as moot, dismissal of the complaint as moot, and I would like to address why the complaint is moot and does not fall within any of the mootness exceptions, which are very narrowly construed, very limited, and the proponent has the burden of showing every element. And along the way, I hope to correct a couple of things that were stated that I believe were misstated. With respect to whether the case is itself moot, I don't think there's any real question about that. There's no dispute that the gun licenses were restored here, so the plaintiff is not experiencing any concrete effect from these statutes. He's asking for an advisory opinion about things that happened in the past. I think that came out in his discussion where he's saying, well, something could happen in the future. That is, I think, the nature of an advisory opinion. Why is that advisory? I mean, clearly he was in possession of guns when he wasn't allowed to be under the FOID and care concealment. But at this time, he's not experiencing the effect of these statutes because he's not subject to a protective order. So even if the court were to validate those statutes, it would not have any effect on him because he has his gun licenses. I know, but he didn't for a period of time. So there was criminal activity during that period of time. That's like saying if you possess marijuana two weeks ago and they find something in your blood, you can't be charged with it because it's two weeks ago. The fact that he possessed them illegally, that doesn't resonate with me. It's in the past. I think you're already getting into the collateral consequences exception and his suggestion that he could be prosecuted for not relinquishing his FOID card. Is that the nature of your question? Right. I mean, he could be. Well, that would be exception to a mootness doctrine. That particular exception does not apply here for multiple reasons. For one thing, it's forfeited. That was nowhere in any of his allegations or in anything that he presented to the circuit court. But that's something this court can invoke. There's more. I mean, we can invoke the exceptions to the mootness doctrine. There are substantive reasons why it doesn't apply. I point out the forfeiture, that this is newly raised. But also, his invoking of that exception is based on a misreading of the statutes. He's saying that under the FOID Act, there's no time period for a person to comply after a temporary suspension. And that's just a misreading of the statute. There's a statutory provision, Section 9.5, and there's also a provision in the Concealed Carry Act, that allow a 48-hour compliance period in which the person that has the opportunity to comply to transfer their notes during that time period. So it's not that immediately there's some type of misdemeanor activity for immediate noncompliance. There's this period. And additionally, in order to meet that exception, if he's saying there is a threat of prosecution here, he would have to demonstrate that. It's clear from the United States Supreme Court decisions that he would have to demonstrate that. But that was likely that he would face that specific, concrete consequence. And there's nothing like that. There's no evidence that some type of prosecution for this is even remotely likely. And that's something that he has a burden on. So those are all the reasons why that particular exception does not apply. I'd also like to address the other exceptions. This Court, though, and I'm sure we'll get to it, but this Court, on its own, can find that there's moot, that the issue is moot. But because of, say, the public interest that it may occur again, we have the right to invoke that doctrine, don't you think? Or am I wrong about our power here? You have the right to determine whether an exception exists, yes. Okay. So I have a question about this because it's something – I think this is an interesting case, quite frankly. But under the DUI statutes, when you're caught with a breathalyzer that exceeds the allowable limit, they suspend your license after a period of time. But during that period of time, you're given the opportunity to have a hearing, right? They don't suspend it right that second, like you can't get in the car and drive. You get a hearing. We agree with that? I'm not sure how the DUI statute works. Well, just assume I'm correct. I can discuss what happens under the statutes here. Just assume I'm correct on that, okay, that a hearing is allowed before that license is revoked. And as I read the law in Illinois, driving is a privilege. It's not a constitutional right. Here we have a constitutional right that's being revoked without any sort of hearing, even though we give a hearing to people who are arrested for DUI. And I'm trying to reconcile in my own mind, why do we give a hearing for a privilege and we don't give a hearing for a constitutional right? Why is a hearing not needed here? Can you help me with that? A hearing happens under the Domestic Violence Act. It's the plaintiff's view that the hearing needs to happen even earlier. But do you mean earlier? What does that mean? His claim is that these two statutes that he's challenging, those two statutory provisions have a constitutional defect only with regard to emergency, ex parte, orders of protection. And his claim is that the defect is only insofar as they allow for the temporary revocation without notice in a hearing. And what I think he is overlooking, and this is part of why the public interest exception is not met, because you need a substantial public question, I think he's overlooking the ample process that is actually provided under the Domestic Violence Act. So under the Domestic Violence Act, you have a temporary order, and yes, that does trigger the temporary suspension of gun rights, but you also get a hearing on the merits within short order under the Domestic Violence Act. And there's additional process provided under the Domestic Violence Act where if someone is subject to a temporary ex parte order, and upon receiving that order, being served with the order, if they feel that they have a valid defense, they can go back into court on two days' notice to the petitioner and challenge it. So there's additional procedure available. So for these reasons, the public interest exception is not met here. I'm addressing now specifically the problem that deals with the question of a substantial public nature, something that has great magnitude or immediacy, and actually his claims here have a very narrow scope because he's not challenging any of the succeeding steps that can happen under the Domestic Violence Act. He's only challenging the concept of a notice and a hearing with regard to ex parte orders. And today, he seemed to be perhaps walking back from that a bit, but it's very clear from his complaint and his brief that he's only challenging the statutes insofar as the statutes do not incorporate a notice and hearing provision with respect to ex parte temporary orders. He says here, I'm reading from his brief, no challenge is made in this appeal to any suspension of rights following a hearing with actual notice and opportunity to be heard. So he's saying that if you give me an opportunity to be heard before you automatically suspend my rights, then due process is attached. But he still has that opportunity. The temporary order times out in 14 to 21 days. It's followed by an interim order or a plenary order, and those orders are entered. Those orders also trigger the suspension of gun rights. Those orders are entered after notice and hearing. So my point is that his claims are very narrow and that he's only challenging this one part of a process which does allow him notice and hearing, and which will often be expected to also result in the temporary suspension of gun licenses while the order is in effect. So I believe those claims are narrow, they're procedural, not substantive, and they are ignoring that there is ample process available under the Domestic Violence Act. It's just not the process that he would consider ideal. And for those reasons, this is not the type of case that raises the truly exceptional question of a substantial public nature. And that's why one prompt there is not met. Additionally, another component of requirement for that exception is that an authoritative determination is needed for future guidance. And that has been interpreted by the Illinois Supreme Court to mean something more than, well, it might be helpful in the future to have an opinion on this. It is usually expected that the law will be in disarray or that there will be conflicting precedent on the issue. We have nothing like that here in this case, and so that exception is not met as well. But the Illinois Supreme Court has recognized that in a truly exceptional momentous case, you might not need disarray or conflicting precedent. You could, the exception could be met in a case of first impression, but again, because we're dealing with something, his claims, the particular claims that he brought in his complaint, and that he has said he's challenging in his appellate brief is very narrow, simply seeking this notice and hearing, which he does receive under the Domestic Violence Act, just slightly later in the rush of the process. But his hearing under the Domestic Violence Act is under an entirely separate statutory scheme. And it's true, Mr. Magg points out, that he times out automatically with the 30-day period to respond. If he files a lawsuit prohibiting the state from enforcing the FOID Act, no one even needs to answer that until 30 days after they're served, which could add an additional time period. So he has, it seems like, no remedy under the FOID provisions, but he has to go to OP court and see what happens. But what is his remedy of due process under the Firearms Owners Identification Act or the Concealed Carry Act? Well, I think it's very relevant to look at, because his claim is process-based. The process that he gets in the underlying order of protection proceeding is actually very relevant to determining the significance of that claim, because he's saying, I want process, and he has process. He has process in the proceeding that he's, in the underlying proceeding that has led to the temporary suspension. I think Your Honor was touching just now on the fact that isn't this a short duration? And a matter that is a short duration is one element of the capable-of-repetition-yet-evading-review exception. But simply because something is of short duration does not mean that that exception is met. It also requires a showing that there's a reasonable expectation that the same complaining party would, again, be subject to those statutes. What about the federal statute that says you're entitled to notice that he cites in his brief? 18 U.S.C. 921 for N.A. 32. What about that? How do you square that with what's happening here? The federal statute talks about situations that trigger federal gun limitations or restrictions. And we're talking about a situation now that involves what state law requires. They don't have to be on the same page in all fours. There's the federal scheme, and there's the state scheme. But you say our scheme, and he's arguing a procedural issue, not a substantive right. Yes, I'm saying it's not procedural because his challenges were completely based on there is not an additional notice in hearing provided for in these gun regulation statutes at the juncture of an ex parte hearing. That is his only claim. So I think I started addressing the capable of repetition yet debating review exception we talked about. There's a short duration. But he also needs, for that exception, a reasonable expectation that he will be subject, again, to those statutes. And that, I think, is purely speculative here. There isn't a showing where we can say there's a reasonable expectation that a protective order would, again, be entered against him. He's invoked Roe v. Wade for that. When you actually look at that decision, I don't think that that's much of a help because actually the case was a class action there. And so the United States Supreme Court was looking beyond just whether Ms. Roe herself would be likely to face additional pregnancy in the future, but was looking more broadly whether anyone would. And here we're just looking to Mr. Kaczynski's circumstances. And additionally, it's clear from reading the decision that the court found really something very unique and compelling about the pregnancy situation, that the litigation itself was about pregnancy and that it was getting at, you know, it was essentially this very unique and recurring basic aspect of human life. And there's not comparable, sometimes comparable, exceptional circumstances presented here. The cases where the capable of repetition, yet evading review exception has actually been applied tend to involve an institutional litigant who's got a newspaper that you know they're going to have more cases. They're going to want to be back in court and get this information again. That's in a minor where the court said to meet that exception, the statute has to most likely be applied to the same litigant in the future. And I don't think we have that threshold. Another example would be the case of DCFS being ordered to videotape their investigations in child abuse cases. Well, that's what DCFS does is investigate child abuse cases. So there's a reasonable expectation that that issue might occur. I don't think we can really say of anyone that there's a reasonable expectation that they would be subject to a protective order in the future. So that exception is not met as well. We have, for the public interest exception, there's a capable of repetition part, but that can just be for the public at large. But when we get into the capable of repetition, yet evading review exception, you then are talking about that same specific litigant. There's also some, and I believe I've addressed the final exception with the collateral consequences exception, where that's based on his claim that there's a threat of prosecution. And I believe I've addressed that in explaining that he's just misreading the statutes. There is a compliance period, and he's not shown that any type of prosecution over that is even remotely likely. Additionally, there's a lot of discussion of facts outside the record, about what supposedly happened in the underlying procedure with his father-in-law. He's also suggested that to get the license back, you need to file an appeal with the department, and that that procedure would take 45 days. Again, it's not in the record. But the statute does say that. The statute doesn't say anything about filing an appeal in 45 days. It says you're entitled to a hearing. Section 65-10. The procedure in this case for, and again, this is outside the record, but you call a number on the correspondence that the state sends you upon revocation, and if you can say that the order is vacated, it should be a simple process of having it restored. But now I'm talking outside the record. But my point was simply that the idea that you have to file a formal appeal is also not a record and not correct. There was some discussion of the motion to strike. I think it's appropriate for the court to take judicial notice of the underlying protective orders because they're court records. And the plaintiff isn't really disagreeing with that. He's saying, well, the court should choose not to do so. He's saying that the situation here is like that in a case called People v. Level, where the state submitted a variety of things. We think it's a very different situation now with revocation. Thank you. I have a rebuttal. Thank you. I'll try to be very brief in my rebuttal. First, as far as the argument by counsel that there is a time period to dispose of firearms, surrender a FOIA card after it's suspended in the circumstance we're talking about, the answer to that is yes and no. And I'll explain that real simply. One, it is illegal to possess a firearm with a revoked, suspended, or nonexistent FOIA card. That's Statute A. Statute B, which is a separate criminal offense, makes it a violation not to dispose of firearms in that circumstance within 48 hours. And what statute is that? That would be 430 ILCS 65-9.5. The fact that, I'll give you an example, recently our legislature passed a statute that makes it a criminal offense to possess a silencer with an altered or mutilated serial number. Okay. There's another statute in Illinois that says it's a criminal offense to possess a silencer period in the sentence. It is not a defense to both statutes that your silencer has a serial number. Here, it might provide a defense to the second statute that you surrendered your FOIA card within 48 hours, but not the first statute that makes it a criminal offense to possess a firearm with a suspended, revoked, or nonexistent FOIA card. Does the statute which requires you to surrender your FOIA card in 48 hours also require you to surrender your guns? It purports to do so. It purports to require you to give a list to the state of the guns and their disposition. It says that they shall disclose on a form the list. Yes. But where in the law does it say that you have to surrender the guns? Does it say that? Well, you obviously can't legally possess them. It's probably perfectly legal to transfer them to a third party who can legally possess them. Candidly, I routinely, in these circumstances, advise my clients to take their guns to the state of Missouri where, with an ex parte emergency order of protection, it's legal for them to be stored. No federal law prohibiting that in this circumstance. It's simply illegal. Well, I don't see in the statute that you have to surrender the gun. I agree that ultimately you don't have to surrender the gun. It's simply illegal for you to possess it. For instance, a felon can own a gun. He simply can't possess it. Well, don't you think the rationale for a person who's got an order of protection against him is so that they can't use the gun on the person who's trying to be protected? That's presumably the rationale. But the Supreme Court also says you have a fundamental constitutional right to keep and bear a functional firearm in your home for purposes of self-defense. At least in this case, the person who threatened to attack my client at his home got an order of protection that made that impossible legally. I mean, it flips the constitutional right on its head. I mean, all an attacker would have to do is file for an emergency ex parte order of protection, have an order requiring my client or the victim to get rid of their guns, and then they're pretty safe in attacking that person. But you just said you advise your clients to go hide them in Missouri. Transfer them. Right. So obviously the clients, at least you've represented in that regard, have not surrendered their guns, although they have surrendered their FOID card. I am not personally aware of anybody that has actually surrendered their firearm pursuant to an emergency ex parte order of protection to the police. I am aware of police seizing them, but there's a difference between surrendering them and seizing them. And if there are no further questions, thank you. All right. Thank you, counsel. We'll take this case under advisement and issue a written disposition in due course.